525 So.2d 912 (1988)
Bill Donald KEETON, Appellant,
v.
STATE of Florida, Appellee.
STATE of Florida, Appellant,
v.
Bill Donald KEETON, Appellee.
Nos. 87-1330, 87-1365.
District Court of Appeal of Florida, Second District.
April 20, 1988.
Rehearing Denied June 2, 1988.
C. Stephen Allen of Mitcham, Weed, Barbas, Allen & Morgan, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
*913 RYDER, Acting Chief Judge.
In the early morning hours of April 6, 1985, appellant's vehicle collided with a vehicle driven by Gail Shane. Shane and Renaldo Stefanel, a passenger in appellant's vehicle, died as a result of injuries sustained during the collision.
The evidence revealed that on April 5, 1985, around 9:00 p.m., appellant met Stefanel and another friend, Karen Hunt, at a restaurant for drinks. Between 9:00 and 11:00 p.m., appellant drank two and one-half scotches and water. The three then left in a car driven by appellant to meet some of Stefanel's friends at another restaurant. They were with Stefanel's friends for approximately one-half hour. While they were there, appellant drank one-half of a scotch and water. At approximately midnight, the three departed, in the vehicle driven by appellant, to have dinner at another restaurant.
Appellant was driving south on Dale Mabry Highway, just south of Hillsborough Avenue. That portion of Dale Mabry is a six-lane concrete road divided in the middle by a concrete median, six to eight inches high and approximately six feet wide. The speed limit in this area is 45 m.p.h. On the west side of Dale Mabry, just south of Hillsborough Avenue, is a Holiday Inn motel. Appellant was driving in the far right lane and was traveling at a high rate of speed, testified to as between 65 and 100 m.p.h.
As appellant approached the Holiday Inn driveway, a vehicle operated by a Holly Storey left the Holiday Inn driveway and stopped in the crossover break in the median. Seconds later, Shane, following Storey in Storey's vehicle, drove out of the Holiday Inn driveway onto Dale Mabry. Appellant's vehicle, traveling at a high rate of speed, struck the vehicle driven by Shane.
A nearby Tampa Police Department Officer, Sgt. Jack Waters, heard the noise created by the crash, radioed for assistance and proceeded to the scene. He was the first to arrive. He checked the occupants of appellant's vehicle and then proceeded to direct traffic.
A few minutes later, Officers Davis and Sementilli arrived. Officer Sementilli remained with appellant until medical assistance arrived. Officer Sementilli then went to direct traffic.
Shane was killed instantaneously and Stefanel died before he could be removed from appellant's vehicle. Appellant and Hunt were taken to the hospital for their injuries.
After appellant was taken to the hospital, Sgt. Waters ordered Officers Davis and Sementilli to go to the hospital. Officer Sementilli gave a blood sample test kit to the emergency room nurse to take a blood sample from appellant. Appellant's blood was taken at 1:37 a.m. He had a blood alcohol level of .15 percent.
Appellant filed a motion to suppress the blood sample taken. At the suppression hearing, appellant argued that the officers lacked probable cause to have the blood sample taken. Appellant argued that Sgt. Waters did not have probable cause to order the blood sample because he did not detect the smell of alcohol on appellant and was not otherwise informed that appellant might have been intoxicated. Appellant argued that Officer Davis lacked probable cause because he went to assist Shane and never had contact with appellant. Appellant also argued that although Officer Sementilli detected the smell of alcohol on appellant, he did not report it to Sgt. Waters, who ordered the officers to have the blood sample taken. Appellant contended that the blood sample was taken pursuant to departmental policy to take a blood sample in any fatality case and was not based on probable cause. The trial court held:
In the first place, I believe Officer Sementilli's testimony today about smelling the odor of alcohol on Mr. Keeton is supported by the testimony of Mr. Montefu, who also said he also smelled in the back of the ambulance when he was close to Mr. Keeton the odor of alcohol on his breath. Officer Sementilli's comments today to that effect are supported by Mr. Montefu in that respect.
The Court finds that the investigating officer had probable cause to believe the *914 defendant was the driver of an automobile which had been involved in an accident in which someone suffered death or serious personal injury. And the defendant Keeton was operating his vehicle while under the influence of an alcoholic beverage.
If the officer finds that there is probable cause or believes there is probable cause that he was driving while under the influence of alcoholic beverages, then he can proceed on that as a probable cause presumption. And the Court has so found.
A jury trial was held. Appellant was convicted and sentenced on two counts of manslaughter by intoxication in violation of section 782.07, Florida Statutes (1985).
Appellant raises seven points on appeal, only two of which merit discussion. The state raises one point on cross-appeal. We find merit in the state's point. We now address each of the three points.
Appellant contends that the results of the blood test should have been suppressed because Sgt. Waters lacked probable cause to order the test. Section 316.1933(1), Florida Statutes (1985), provides:
[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages or controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances... .
In Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984), the court held:
Probable cause exists under section 316.1933(1) to order a blood test if the officer, based upon reasonably trustworthy information, has knowledge of facts and circumstances sufficient to cause a person of reasonable caution to believe that the suspect driver was under the influence of alcoholic beverages at the time of the accident and caused the death or serious bodily injury of a human being.
Id. at 918.
In the instant case, the officers had probable cause to administer the blood alcohol test. Officer Sementilli smelled a strong odor of alcoholic beverages on appellant's breath at the scene of the accident, and he personally knew that appellant was the operator of a vehicle which had caused at least one death. Our approval of the trial court's finding of probable cause is buttressed by Paramedic Roland Montefu's testimony. Paramedic Montefu testified that he detected the smell of alcohol on appellant and that he noted "alcohol-like odor on [appellant's] breath" in his report. Montefu testified that it was his practice to notify the officers of such an observation prior to his leaving the scene; however, he could not remember whether he notified the officers that evening.
Appellant also contends that the trial court erred in failing to require the state to show that appellant was the "sole proximate cause" of the accident. Section 316.1931(2)(c), Florida Statutes (1985), provides:
If the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslughter and on conviction shall be punished as provided by existing law relating to manslaughter.
In Baker v. State, 377 So.2d 17 (Fla. 1979), the Florida Supreme Court in construing section 860.01(2), Florida Statutes (1977), (section 316.1931(2)(c)'s predecessor), held:
Direct proof of the following elements is required for a conviction of manslaughter under subsection (2) of this statute: (1) a death occurred; (2) the death resulted from the operation of a vehicle by the defendant; and (3) the defendant was intoxicated at the time he operated the vehicle.
Id. at 18. The state does not have to show proximate cause. The state need only prove that a death occurred as a result of the operation of a vehicle by the defendant while the defendant was intoxicated. The supreme court stated:

*915 [N]either negligence nor proximate causation is an element of the crime embodied in section 860.01(2), Florida Statutes (1977), and the failure to include them as elements of proof does not deprive appellant of due process of law.
Id. at 20.
In the instant case, the state met its burden under section 316.1931.[1] The state showed that both Shane and Stefanel were killed as a result of appellant's operation of a vehicle while appellant was intoxicated.
On cross-appeal, the state contends that the trial court erred in departing downward from the sentencing guidelines recommended range. The sentencing guidelines recommended range was seven to twelve years' imprisonment. The court imposed a split sentence of three years' imprisonment to be followed by seven years' probation. The court provided the following written reason for its departure from the sentencing guidelines recommended range: "The court departs from defendant Bill Donald Keeton's guidelines sentence for the following clear and convincing reason: the circumstances surrounding the case." The learned trial judge stated: "This court is going to give the Second District Court of Appeals (sic) and the Florida Supreme Court an opportunity to tell us what is meant by, `the circumstances surrounding the offense.'"
"`Clear and convincing reasons' require that the facts supporting the reasons be credible and proven beyond a reasonable doubt." State v. Mischler, 488 So.2d 523 (Fla. 1986). Reasons for departure must be sufficiently articulated. McCammon v. State, 510 So.2d 657 (Fla. 2d DCA 1987). Merely by stating "the circumstances surrounding the case" and leaving the appellate court to determine what the circumstances are is an insufficient reason for departure.
Appellant, relying on Vanover v. State, 498 So.2d 899 (Fla. 1986), argues that the appellate court may turn to the record on appeal to flesh out factual support to better ascertain the sufficiency of reasons given for departure. Vanover is factually distinguishable from the instant case. In Vanover, the trial court gave the following reason for departure: "This was a particularly aggravated set of circumstances which sets this case far and above the average Aggravated Battery." The Florida Supreme Court held:
While finding the reason valid, we note some problems with its abbreviated, undetailed form. We, however, with the district court, do not construe our decision of State v. Jackson, 478 So.2d 1054 (Fla. 1985), as "prohibiting us from going to the record to flesh out the factual support to better ascertain the sufficiency of the reasons given." [Vanover v. State] 481 So.2d 31 at 32 [(Fla.App. 1985)]. We do wish to reiterate the importance to the reviewing court of having available in writing specific findings of fact supporting the reasons for departure which are credible and proven beyond a reasonable doubt. Lerma v. State, 497 So.2d 736 (Fla. 1986). Reasons phrased in the form of the one under review should be avoided, or at least supported by specific and written facts indicating clearly the basis of the trial court's decision to depart.
Id. at 902. In Vanover, the trial court made an effort to flesh out a valid reason for departure, a set of circumstances "far and above the average Aggravated Battery." Id. at 901. In the instant case, the trial court deliberately avoided setting out the circumstances justifying departure and stated that the trial court would allow the appellate court to determine what the "circumstances surrounding the offense" are. It is obvious from reading the record on appeal that the hardworking and diligent trial judge was frustrated by his perception of the sentencing guidelines procedure. However, until modification or other change occurs, we believe the better practice in approaching decisions relating to sentencing guidelines procedure is to follow *916 the decisions of the Florida Supreme Court and the District Courts of Appeal. Accordingly, although we affirm appellant's conviction, we reverse appellant's sentence and remand for resentencing within the sentencing guidelines recommended range.
Appellant contends that the trial court improperly calculated his scoresheet because the trial court included points in the scoresheet for a prior Indiana conviction. However, according to appellant, the official record of Indiana showed that "Mr. Keeton was not adjudicated guilty; thus, he does not have a prior conviction." Appellant fails to provide evidence in support of his position. According to the minutes from the Indiana sentencing proceeding, appellant pleaded guilty, the court found him guilty, sentenced him and then suspended the sentence placing the appellant on one year probation. Thus, we find that the trial court properly included appellant's prior conviction in the scoresheet.
In sum, we affirm appellant's conviction, reverse his sentence and remand to the trial court for resentencing within the sentencing guidelines recommended range.
LEHAN and HALL, JJ., concur.
NOTES
[1] We note that the legislature recently repealed section 316.1931 by chapter 86-296, section 13, Laws of Florida, effective October 1, 1986. The repealing of the statute, however, does not affect our decision.